### HARROD v. COMMONWEALTH et al.

Court of Appeals of Kentucky.

Dec. 19, 1952.

Otis Harrod, pro se, LaGrange, W. Clarke Otte, Louisville, of counsel, for appellant.

J. D. Buckman, Jr., Atty. Gen., A. Scott Hamilton, Commonwealth's Atty., Louisville, Jo M. Ferguson, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

The appeal is by Otis Harrod from an order of a judge of the Criminal Branch of the Jefferson Circuit Court denying release upon a writ of habeas corpus from confinement in the reformatory upon conviction of storehouse breaking. Upon allegation and proof of three previous convictions of felonies, his punishment was fixed at life imprisonment as an habitual criminal. Harrod v. Commonwealth, 311 Ky. 810, 226 S.W.2d 4, certiorari denied 339 U.S. 915, 70 S.Ct. 562, 94 L.Ed. 1341. Denial of a previous petition for habeas corpus

based upon defective charges of being an habitual criminal was affirmed in Harrod v. Whaley, Ky., 239 S.W.2d 480, and denial of a writ of error coram nobis upon the same ground affirmed in Harrod v. Whaley, Ky., 242 S.W.2d 750. The present petition is, in essence, based upon the ground that the several indictments against the petitioner were void because the grand juries which returned them were without legal authority. Harrod pleads his own cause but upon the solicitation of his father, he had the assistance of an able attorney in examining the witnesses and records. The appellant has insisted upon representing himself on the appeal. Though not learned in the law, the appellant shows a familiarity with procedure and is unusually resourceful. He has gone exhaustively into many cases dealing with due process, habeas corpus and kindred branches of the law and legal rights. We have read with tolerance and patient care his pleadings and briefs which, in the main, raise points that are not applicable or which have been heretofore disposed of in his several appeals. We have considered the law with extraordinary care since the appellant is not represented by an attorney and has a confused concept of the applicable law. We find he has been denied no constitutional right. The essential point above stated, however, presents very serious questions.

The statute, KRS 29.240 is clear:

"Grand juries shall not remain in session longer than six days at any regular term of court, but the court may, if the business before the grand jury requires it, extend the time of the grand jury not more than three days longer, and may, in an emergency, call not more than three special sessions of the grand jury for not more than three days at a time. The court in extending the session of a grand jury or in calling a special session of the grand jury shall set forth the reason in an order entered on the order book of the court."

The Circuit Court of Jefferson County is one of continuous session. KRS 23.050 (30). Chapter 24 of the Statutes relates to courts of continuous session. At the time of the proceedings involved, the Jefferson Circuit Court had seven judges, one of whom presided over a criminal branch. Secs. 24.170, 24.180, KRS, 1948 Edition.

The record in the case is that at least as far back as 1902 it has been the custom in the Jefferson Circuit Court to impanel a grand jury on the first Monday of each month and have it continue in session for the entire month if circumstances necessitate it. Usually the sessions have been intermittent and not daily during the month. No order of court has ever been made extending the sessions beyond six days, as provided by KRS 29.240. It is shown that the three former indictments of the petitioner, Harrod, were returned within the first six days of the grand juries' sessions, but the indictment upon which he was found guilty and sentenced to imprisonment for life was returned on the seventh day. So the question is pertinent.

The Commonwealth's Attorney takes the position that the statute limiting sessions of grand juries to six days except upon orders of the court, applies only to courts having terms and does not apply to courts of continuous session. He further argues that by contemporaneous construction it must be held that KRS 29.240 carries an exception of the Jefferson Circuit Court so that the practice, observed for at least fifty years, has statutory sanction. The Attorney General's position is in opposition. He maintains, however, that the petitioner is not entitled to the relief sought because the indictment was by a de facto grand jury and the petitioner waived the right to question its validity by not having moved to set it aside. The Commonwealth's Attorney agrees and supplements the argument.

Does KRS 29.240 apply to a court of continuous session because it does not have a "regular term?" Chapter 451 of the Revised Statutes relates to practice in courts having continuous session. KRS 451.060 is entitled, "Month treated as term in criminal and penal actions" and provides that motions and acts shall be made and taken "as if each month, beginning with the first

Monday of the calendar month, were a term." KRS 451.070 provides that the summons in a criminal action shall be for the first Monday of the month named in the summons. KRS 451.130 provides that each court having continuous session shall have control over its judgments for sixty days as other circuit courts have over their judgments during the term in which they are rendered. Other provisions and numerous decisions of this court establish sixty days from the date of a judgment or other final action as a civil term. In Crane v. Brooke, 109 Ky. 647, 60 S.W. 404, 405, 22 K.L.R. 1271, in construing this statute we held that the Kenton Circuit Court "is a court of continuous session, but not a court of continuous term", so that a special judge chosen to try a particular case had no power to preside after the expiration of sixty days. And that opinion was interpreted a few days later as establishing the period as a "term." The reasons for recognizing that there are terms for civil cases, establish each calendar month as a term for criminal and penal cases. This view is, at least by implication, confirmed by the language of several sections in Chapter 29 of the Statutes which relate to grand and petit juries. KRS 29.170 provides that persons chosen as grand jurors shall be summoned to attend the court on the first day of the term "except that in courts of continuous session the jurors shall be summoned to attend on the first Monday in the month for which they were drawn or on such day as is ordered by the judge." KRS 29.200 provides, "In courts of continuous session the judge of the court, or of the criminal division if the court has divisions, shall impanel a grand jury on the first Monday of each month that the court is in session, unless otherwise ordered by the judge." Thus, we have the members summoned and the grand jury impaneled in a court of continuous session on the first Monday of the month. The two sections make a difference between the two types of court. These provisions for courts of continuous session are in harmony with the provisions in which it is implicit that one month constitutes a term. We cannot ascribe, as does the Commonwealth's Attorney, the force to be given the word "for" in the phrase in KRS 29.170 that the panel will be summoned "in the month for which they were drawn" as indicating that their service shall be for an entire month. Such reading would not coordinate with the grand jury scheme otherwise quite clearly outlined. KRS 29.240 makes no distinction between the two types of court in dealing with the time in which grand juries may function. The absence of an exception or distinction is very persuasive. If it should be read into the statute by judicial construction, we would have no limit whatsoever upon the time of service in courts of continuous session other than the possible implication that it would be for one month while in other courts there is a definite time. Indeed, in Anderson v. Commonwealth, 291 Ky. 727, 166 S.W.2d 30, we recognized that the terms of KRS 29.240 relating to calling special sessions of grand juries apply to a court of continuous session, namely, the Fayette Circuit Court.

The Commonwealth's Attorney brings the rule of contemporaneous construction in support of the contention that the statute does not apply. Extrinsic aid to the interpretation of a statute may often be of great assistance in ascertaining the meaning or the legislative intent, but such construction must be weighed with other factors. In the present case, we have as added weight the fact that the construction has not been by administrative or executive officials of a statute by which they were governed but has been the unchallenged construction throughout the years by the Louisville bench and bar of a statute, peculiarly legal, controlling the functioning of the court. See 50 Am.Jur., Statutes, Sec. 320. However, we are informed that other courts of continuous session have not so construed the statute. The question was precipitated by a recent ex parte opinion of the Attorney General's staff. Into the scales as counterbalance is the contemporary history of the enactment and amendment of the statute. Such history may of itself be persuasive of the meaning of an uncertain law. This statute was originally enacted by the General Assembly of 1893, which revised the stat-

utes to bring them into conformity with the recently adopted Constitution. Chapter 210, Acts of 1893, was a complete codification of the law relating to grand juries and petit juries in all courts. The genesis of the present KRS 29.240 was Sec. 11 of Article II of Chapter 210 and was compiled as Sec. 2251 of the Kentucky Statutes. The co-ordinate provisions of the present KRS 451.010 and 451.060 had been enacted the year before in substantially the same language, using the word "term" as being a calendar month. Secs. 1 and 4, Chapter 124, Acts of 1892. The reason for the original act that is now KRS 29.240 seems to have been economy for it read:

"Grand jurors shall be paid for their services each two dollars per day, and shall not remain in session longer than six days at any term, unless by order, entered of record by the court, they are permitted to sit longer."

It was amended in 1926 to raise the pay to $3 per day, and again amended and re-enacted in 1932. Here, for the first time, appear the word "regular" in connection with "term" and the restrictions on the court as to extending the time for a grand jury to three days longer. The Act also added the provisions for calling special terms. Chapter 64, Acts of 1932. The word "regular" was clearly used in distinction of a "special" term.

As written in Sutherland Statutory Construction, Sec. 5104, "statements appear and reappear in the decisions to the effect that contemporaneous or practical interpretation will not be permitted to control the meaning of the plain and unambiguous terms of a statute." We have made many such declarations, one of which is in McNally v. Grauman, 255 Ky. 201, 73 S.W.2d 28.

"Thou shalt not" labor but six days during a term of a calendar month is the command to the grand jury unless the court shall otherwise order. This seems to us to be so clear and positive as not to be open for debate. The legislative history fortifies the conclusion from what we believe to be the logical analysis of the present statutes, that the limitations of KRS 29.-240 apply to the Jefferson Circuit Court. The rule of contemporary construction does not require the court to abet a misconstruction of a statute so certain. Though the population of the county has multiplied many times since the original enactment and there may be great need for the grand jury remaining in session longer than six days, changed conditions cannot broaden its meaning or scope. The condition presents a legislative and not a judicial problem except as it may be met from term to term by orders of the court extending the time of the grand juries.

We reach the question of the effect of the indictments having been found on a day after the time stipulated in the statute had expired. Did the absence of an affirmative order of the court to hold a session on that day render the indictment and judgment thereon void and thereby permit a successful collateral attack by a petition for habeas corpus? Or, was the procedure irregular only to the degree that it was erroneous, rendering the judgment merely voidable upon seasonable challenge?

In regular course of procedure the court duly received the indictment and made an appropriate record. The accused, Harrod, demurred to the indictment but did not move to set it aside and did not raise the question of error on his appeal from the judgment of conviction. Secs. 157 and 158, Criminal Code of Practice, lay down the rule that the defendant, before entering any other plea, may move to set aside or quash the indictment upon three grounds; (1) irregularity in the summoning or formation of the grand jury, (2) the presence of an outsider when it acted upon the indictment, or (3) that the indictment "was not found and presented as required by this Code." We have consistently held any substantial deviation to be prejudicial error, if objection was seasonably raised, Fugate v. Commonwealth, 313 Ky. 845, 233 S.W.2d 1019, but we have never held such to be a jurisdictional error that rendered the judgment void. Though the present irregularity does not seem to be within the grounds stated in Sec. 158 of the Code of Practice, a motion to set aside the indictment upon the ground here submitted is un-

doubtedly the proper procedure, and such was not filed in the present case. But if the error was of such magnitude as to render the judgment void, the failure would be immaterial for there could be no waiver that would estop him from denying absolute invalidity.

An indictment found by a grand jury of twelve persons, if the crime be an indictable offense, is necessary to give the court jurisdiction. Secs. 12 and 248, Kentucky Constitution. The requirement imports that the grand jury shall be regularly convened in an authorized place at an appointed time. The statutes establish all these things. We are concerned here only with the factor of time.

The variable practices and the discord in views of the courts of other jurisdictions in respect of terms of service and sessions of grand juries are reflected in 24 Am.Jur., Grand Jury, Secs. 6, 19, and 38 C.J.S., Grand Juries, § 32. Generally, it is held that where a grand jury session extends beyond the appointed time, it is a de facto official body. But there are cases holding that deviation from a mandatory statute is fatal and renders the indictments null and void. Illustrative is McDonald v. Colden, 181 Misc. 407, 41 N.Y.S.2d 323, affirmed 267 App.Div. 881, 46 N.Y.S.2d 467, appeal denied 267 App.Div. 910, 47 N.Y.S.2d 593. In that case, on petition for review and to annul an order finding the petitioner guilty of criminal contempt in refusing to answer questions before a grand jury at a session held beyond a definite day fixed by order of the court where proper entries had not been made to continue the term to the date of the petitioner's appearance, the grand jury was not deemed a de facto grand jury and the petitioner was justified in his conduct. In the other and more general line is the leading case of State ex rel. Dunn v. Noyes, 87 Wis. 340, 58 N.W. 386, 27 L.R.A. 776. A grand jury impaneled for a September term adjourned with the court and met again and proceeded to function at the October term without any order directing it to do so. No other grand jury was summoned for October. Defendants indicted in October were released from imprisonment upon habeas corpus by the circuit court on the ground that the grand jury became functus officio and the indictments were void. The Supreme Court reversed the judgment and held the indictments were not subject to collateral attack by the habeas corpus proceeding. It was of opinion that in holding over for the ensuing term the grand jury were de facto officers of the court. A number of cases sustaining its conclusion are cited and many others on the subject collated in the annotations of 27 L.R.A. 776.

In a survey of the opinions it does not appear that there was in any case a statute so mandatory as KRS 29.240 specifically limiting the session of a grand jury to six days unless there is an order of court extending the period.

When we look to our own jurisprudence we have Commonwealth v. Goulet, 140 Ky. 843, 132 S.W. 151, 153. The circuit court of Kenton County was (as now) a court of continuous session holding three terms a year at Independence, the county seat, and other terms at Covington, the more populous city. The statute provided that one of four grand juries each year should meet at the county seat. In moving from one city to the other, the practice was to enter an order merely changing the sittings and not a formal order of adjournment indicating the close of the term. In short, the court remained in continuous session whether sitting at Covington or at Independence. An October grand jury impaneled in Covington was, by order of court, continued for a period overlapping the term at Independence, which continued four days during which another grand jury was organized and functioned there. The Covington grand jury then resumed its deliberations by an order of court and returned an indictment, the validity of which was challenged. Casting doubt upon the legality of the Independence grand jury, this court, in certifying the law upon an appeal by the Commonwealth, expressed the view that the Covington grand jury had been merely adjourned over, or its time extended by a duly authorized order while the court was engaged in Independence. In concluding the opinion, this indefinite statement was added: "It was therefore, at least, a de

facto grand jury, any irregularity in the formation of which could have been reached only by motion to quash the indictment, which was not done either by the commonwealth or appellee." It was observed that the circuit court might have entertained and acted upon such a motion but this court was without authority to review its action. (It is to be noted that Sec. 281, Criminal Code of Practice, has since been amended so that we do have such authority.)

There is a distinction between the Goulet case and the present one in this: In that case the grand jury was functioning under orders of the court and within its statutory power, while in the present one the grand jury overlapped the period and functioned at a time not provided by law.

Unlike construing or adjudicating rights under a statute or instrument, or even applying common law, in determining the degree of error or its consequences, the court is entirely free to exercise an exclusive prerogative according to its sense of justice. It is an independent arbiter. In this we may recognize that the law has outgrown earlier stages of formalism when every slip in procedure was fatal. In the present age, the courts may decline to shut their eyes to the realities and to set aside as naught justice in a particular case because of irregular procedure that did not affect the essence of justice, whether it be justice for the people, who are the Commonwealth, or justice for an incorrigible felon. This attitude and authority, however, ought not and will not lead to departure from established principles or the ignoring of persuasive precedents.

What is just and right in the case at bar? A grand jury is an appendage of the court, functioning under its supervision. 24 Am. Jur., Grand Jury, Sec. 2. This jury had been duly impaneled for a term of one month and was, therefore, a de jure body. Had it been formally discharged, the court, by order, could have recalled it at any time during the term and an indictment then returned would have been valid. Taylor v. Commonwealth, 256 Ky. 667, 76 S.W.2d 923; Marion v. Commonwealth, 269 Ky. 729, 108 S.W.2d 721. Although continuing their sessions without order and without regard for the statutory limitation as to time, the de jure grand jury functioned with the sanction of the court and under color of legal authority, which is the mark of a de facto officer or official body. This was not the case in Meredith v. Commonwealth, 201 Ky. 809, 258 S.W. 686, where the grand jury had not been impaneled or instructed by the judge and had filed an indictment when the court was not in session, which, obviously, rendered the judgment thereon void.

We have come a very long way since the ancient days when the grand jury stood as a barrier against oppression and prosecutions in the name of the King. At first it not only accused but tried public offenders. In these days it functions only as an inquisitorial and accusing body. It is no longer sacrosanct. Nor is an indictment now regarded with sanctity or as the very essence of a scheme of orderly justice, although under our constitutional guarantees there must be an indictment as the basis of prosecution for a felony and its form must comply with the prescriptions of the Code of Practice, Sec. 122 et seq., in order to apprise the accused definitely and fully of the charge. But in some jurisdictions prosecutions by indictment have given way to informations at the instance of public officers. Due process of law does not necessarily require an indictment by a grand jury where a state constitution permits prosecutions by information. Hurtado v. People of State of California, 110 U.S. 516, 4 S.Ct. 292, 28 L.Ed. 232; Gaines v. Wash., 277 U.S. 81, 48 S.Ct. 468, 72 L.Ed. 793. In Kentucky the accused has a constitutional right to be indicted but no constitutional right to say when.

All of this is but to say that the ends of justice are not so diverted by a technical deviation in a procedural course of a grand jury duly impaneled and regularly functioning in every other respect and affording all the legal safeguards, as in the instant case, so as to render an indictment, trial and judgment thereon an absolute nullity. It is merely a deviation of which an accused may take advantage by timely questioning the indictment. In short,

our conclusion of the whole matter is that where an indictment returned under these circumstances is challenged by a motion to quash or set it aside, the court should sustain the motion on the ground that it was erroneous; but it is not an error so fatal as to make the judgment of conviction void. And, as we have stated earlier in the opinion and held in the former appeal of this appellant, Harrod v. Whaley, Ky., 239 S.W.2d 480, the consequence of an erroneous procedure does not render the judgment subject to collateral attack by a petition for habeas corpus.

The judgment is affirmed.